**Robert Allan CORNELL,**
**Appellee/Cross-Appellant,**

v.

**STATE OF IOWA,**
**Appellant/Cross-Appellee.**

Nos. 80–1068, 80–1029.

United States Court of Appeals,
Eighth Circuit.

Submitted April 18, 1980.

Decided July 2, 1980.

Rehearing and Rehearing En Banc
Denied July 30, 1980.

Keith Uhl and Ann Fitzgibbons, Scalise, Scism, Gentry, Brick & Brick, Des Moines, Iowa, for appellee/cross-appellant.

Before BRIGHT and ROSS, Circuit Judges, and SCHATZ,* District Judge.

SCHATZ, District Judge.

Appellee, Robert Allan Cornell, was convicted by a jury in Iowa state court of first degree murder and sentenced to life imprisonment. Following an unsuccessful appeal to the state supreme court, *State v. Cornell*, 266 N.W.2d 15 (Iowa), *cert. denied*, 439 U.S. 947 (1978), Cornell filed the instant petition for a writ of habeas corpus. Among his asserted grounds for relief, Cornell claimed that the trial judge improperly coerced a verdict when he inquired into the numerical division of the jury after they had retired to deliberate on the case and then followed the inquiry with an *Allen* charge or verdict-urging instruction. Cornell contends that the United States Supreme Court constitutionally condemned the practice of ascertaining the jury's standing by its holding in *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). The district court agreed and granted the writ. After careful consideration, we conclude that the rule laid down for the lower federal courts in *Brasfield* is not a rule of constitutional construction binding on the states and that, under the totality of the circumstances presented by this case, Cornell was not deprived of a fair and impartial trial. Therefore, we reverse the decision of the district court and direct that the petition be dismissed.

Following Cornell's state court trial, the jury was instructed and sent to deliberate its verdict at 1 p. m. on December 14, 1976. At 3:45 p. m. on December 16, after approximately fifteen hours of actual jury deliberation, defense counsel requested the court to declare a mistrial on the grounds that the jury was unable to reach a verdict. The request was denied. At 9:30 the next morning, the judge called the jurors into the courtroom and inquired as to their nu-

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, argued and Thomas J. Miller, Atty. Gen., Des Moines, Iowa, on brief, for appellant/cross-appellee.

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

merical standing. The foreman responded that the jury stood seven to five, but did not indicate which jurors favored acquittal or which offense (first degree murder, second degree murder or manslaughter) was being considered. After ascertaining that the seven-to-five split had prevailed since the previous morning, the judge read the following supplemental instruction.[1]

Ladies and Gentlemen of the Jury:

The court gives you the following additional instruction:

You have now been deliberating upon this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement if possible.

The case has been exhaustively and carefully tried by both sides, and has been submitted to you for decision and verdict, if possible, not for disagreement. It is the law that a unanimous verdict is required, and while this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

This case must be decided by some jury selected in the same manner this jury was selected, and there is no reason to think a jury better qualified could ever be chosen. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion. Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so. In conferring you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy, either side of a cause. The aim ever to be kept in view is the truth as it appears from the evidence, examined in the light of the instructions of the Court.

You will again retire to your jury room and examine your differences in a spirit of fairness and candor and try to arrive at a verdict.

The jury resumed deliberations at 9:40 a. m. Thereafter, defense counsel twice renewed his motion for a mistrial—once at 12:40 p. m., and again at 2:38 p. m.—since the jury had not yet reached a verdict. Both motions were overruled. At 3:20 p. m., the jury returned its verdict of guilty of murder in the first degree.

In his appeal to the Iowa Supreme Court and again in his petition in the instant case, Cornell urged the alternative theories that either the court's inquiry alone or the inquiry combined with the giving of the *Allen* charge violated his right to a fair trial. The foundation of each claim is Cornell's assertion that the rule announced in *Brasfield, supra,* is constitutionally mandated by considerations of due process and, therefore, applicable to state criminal trials by reason of the Fourteenth Amendment. In *Brasfield,* the Supreme Court reversed a conspiracy conviction in federal court obtained after the trial judge had recalled the jury and inquired of the foreman as to the jury's numerical division. In holding that practice to constitute plain error, Justice Stone's unanimous opinion states in part:

We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury

---

1. Defense counsel made appropriate and timely objections to both the numerical inquiry and to the giving of the *Allen* charge.

will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate court and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this Court from correcting the error * * *. This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done.

*Id.*, 272 U.S. at 450, 47 S.Ct. at 135, 71 L.Ed. 345 (Citations omitted)

The rule thus announced ended any doubt as to whether an inquiry into the numerical standing of the jury provides a *per se* ground for reversal of a *federal* conviction. However, in the more than fifty years since *Brasfield* was decided, the Supreme Court has not had occasion to address the precise question presented by the instant case, namely, whether the rule of *Brasfield* is constitutionally required or whether it represents an exercise by the Supreme Court of its supervisory authority over procedures to be followed in the lower federal courts. Although not entirely without reservation, we agree with the Supreme Court of Iowa that the rule is founded on the latter basis only. *State v. Cornell, supra*, 266 N.W.2d at 19.

In reaching this conclusion, we are particularly persuaded by the thorough and well-reasoned opinion of the Fourth Circuit Court of Appeals in the recent case of *Ellis v. Reed*, 596 F.2d 1195 (4th Cir.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). As observed in *Ellis*, the *Brasfield* Court did not recite or rely on any constitutional provision in reaching its decision. Instead, the rule appears to have been formulated as a vehicle for resolving the conflict then existing among the circuit courts occasioned by the dictum in the earlier case of *Burton v. United States*, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905). *Burton* also involved a federal conviction obtained after an inquiry by the trial judge into the jury's division followed by the giving of an *Allen* charge. In commenting on the former aspect of that procedure, the Court stated:

That a practice ought not to grow up of inquiring of a jury, when brought into court when unable to agree, how the jury is divided * * *. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division, and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge.

*Id.*, 196 U.S. at 307–08, 25 S.Ct. at 250, 49 L.Ed. 482.

When read in light of the rationale suggested in *Burton*, we think the rule in *Brasfield* is more easily understood, not as an announcement of a mandatory principle of substantive constitutional doctrine, but as an administrative admonition to the lower federal courts based upon carefully considered notions of sound judicial practice. The above-quoted language from *Burton* and *Brasfield* reflects a clear and appropriate concern that the conduct of a criminal trial requires the presiding judge in a federal case to refrain from unduly interjecting himself into the deliberative process after the jury has retired to consider its verdict. A principal aim, of course, in jury trials is the receipt of a verdict fairly reflective of

the considered judgment of the individual jurors. To that end, a central purpose of maintaining secrecy in jury deliberations is to insure a candid and uninhibited exchange of ideas among the jurors in arriving at a proper verdict. The lesson of *Brasfield* is that an intrusive inquiry into that process by the trial judge is not to be sanctioned. The two-fold reason for this policy is plain: such an inquiry (1) adversely "affects the proper relations of the court to the jury" and thereby (2) exerts a "serious although not measurable" impact upon the jurors which "may vary widely in different situations, but in general its tendency is coercive." *Brasfield, supra,* 272 U.S. at 450, 47 S.Ct. at 136, 71 L.Ed. 345. We, therefore, share the Iowa Supreme Court's view that the trial judge's inquiry in the instant case was unnecessary and unwise. *State v. Cornell, supra,* 266 N.W.2d at 19.

■ However, we cannot read *Brasfield* as imparting the policy against such inquiries as a dictate of due process. For the same concerns which inspired the *Brasfield* court to implement the ban against a numerical inquiry on the part of federal trial judges can and have been urged in opposition to the giving of an *Allen* charge as well. In that connection, we agree with the following comments of the Fourth Circuit in holding that, in our federal system, the supervision of such practices is the proper province of the state courts:

An inquiry during deliberations as to the numerical split of a jury is in the nature of a supplemental instruction, and is most analogous to the situation before the Court in *Cupp v. Naughton* [414 U.S. 141,

94 S.Ct. 396, 38 L.Ed.2d 368 (1973)]. We are of the opinion that the inquiry is essentially procedural in nature, absent any overt coercion upon the minority jurors. In any event, the jury knew how it was divided. \* \* \* [W]e feel that under the principles of federalism the decision whether to allow the inquiry is best left to the supervising state court. *Ellis v. Reed, supra,* 596 F.2d at 1200.

For these reasons, we reject the contention that the trial judge's inquiry constituted a *per se* violation of appellee's constitutional right to a fair and impartial trial.

■ Addressing appellee's second contention, we also agree with counsel for the State of Iowa that, under the totality of the circumstances presented by this case, neither the inquiry nor the *Allen* charge, nor the two in combination, was coercive of the jury's ultimate verdict of guilty. The jury was about evenly divided at the time the inquiry was made. The judge did not ask nor was he told whether the majority at that time favored acquittal or which offense was being considered. The supplemental charge that was given was mildly worded and did not address itself to the minority members of the jury.[2] Finally, nearly five hours elapsed between the time the supplemental instruction was given and the time the jury returned its verdict. Under these circumstances, we conclude that the jury's verdict was not the product of unconstitutional coercion on the part of the trial judge.

■ Accordingly, finding no merit in appellee's other contentions,[3] we hereby re-

---

**2.** We do not by this observation wish to be understood as holding either that the impact of a numerical inquiry and that of an *Allen* charge can be evaluated in isolation one from the other, or that the giving of even a modest *Allen* charge necessarily indicates that a numerical inquiry was non-coercive. While we agree that a limited inquiry such as that made in this case might, standing alone, be less coercive of the jury than would be an *Allen* charge given alone, we also agree that the coercive impact of even a modest *Allen* charge is heightened when preceded by any inquiry as to the jury's numerical division. When that is done, the impression is inherently conveyed to the jury that the

revelation of their division prompted the giving of the subsequent verdict-urging instruction and that it is, therefore, directed toward the minority jurors.

**3.** In his cross-appeal, Cornell strenuously urges that the trial court erred in admitting into evidence certain out-of-court declarations of one Glenn Oliver, which statements were consistent with Oliver's trial testimony, for the purpose of rehabilitating Oliver after he had been impeached by the defendant. On appeal, the Iowa Supreme Court held that this limited use of the prior consistent statements of a witness falls within an exception to the hearsay rule as

verse the judgment of the district court and direct that appellee's petition for a writ of habeas corpus be dismissed.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.

The majority in this case holds that an inquiry by a state court judge into the numerical division of an undischarged jury does not violate due process. In my view, this holding contravenes the explicit language of *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), wherein the Supreme Court held that "it [is] essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal." *Id.* at 450, 47 S.Ct. at 135, 71 L.Ed. 345.

The majority decides that the holding in *Brasfield* does not apply to the case at hand because it represents only an exercise of the Court's supervisory power over the lower federal courts. Admittedly, the question of *Brasfield*'s constitutional grounding is not free from doubt, for the Court did not specify the source of its authority. Yet the Court employed language that sweeps broadly and closely resembles that found in other due process holdings, notably those that have extended federal constitutional guarantees to the states via the fourteenth amendment. *E. g., Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963) (right to counsel is "fundamental and essential to a fair trial"); *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968) ("trial by jury in criminal cases is fundamental

to the American scheme of justice").[1] In my view, the due process clause (read in conjunction with the right to jury trial) clearly prohibits judicial coercion of a jury.[2] Given the Court's empirical determination in *Brasfield* that a numerical inquiry is inherently coercive, the Constitution not only supports the holding in that case but also requires the same result here.

Apart from the force of the Court's language in *Brasfield*, I believe that the majority's attempt to examine "the totality of the circumstances" in this case raises serious problems. The majority essays to discover the effects on the jury of the judge's inquiry and *Allen* charge even though, as the Court aptly noted in *Brasfield*, the determining factors often "cannot properly be known to the trial judge or to the appellate courts." *Brasfield v. United States, supra*, 272 U.S. at 450, 47 S.Ct. at 136, 71 L.Ed. 345. It follows that the court is inextricably drawn into a thicket where it lacks any reliable map or compass. *Cf. Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (*per curiam*) (holding that, under all the circumstances, a supplemental instruction that the jury must reach a verdict was coercive); *Jones v. Norvell*, 472 F.2d 1185 (6th Cir.), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973) (holding that under all the circumstances, a state judge's numerical inquiry and *Allen* charge warranted habeas corpus relief). I would hold that because the judge's inquiry in this case was coercive at least in tendency,[3] it "is not to be sanc-

---

it is applied in Iowa. We, of course, cannot disturb that conclusion, and we also find that no constitutional error was committed by the limited use of the challenged statements.

1. By contrast, the Court has typically exercised its supervisory authority in furtherance of some narrower rule of evidence or procedure. *E. g., Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (preserving Fed.R.Crim.P. 5(a)); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (weighing prejudicial impact of evidence regarding pretrial silence against its probative value); *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (*per curiam*) (granting a new trial where excluded

prejudicial evidence nonetheless reached members of the jury).

2. In the words of Judge Winter, dissenting in *Ellis v. Reed*, 596 F.2d 1195 (4th Cir.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979),

Preservation of the purity of the jury's deliberations is furtherance of a constitutional objective, not merely the exercise of supervisory power for a desirable but non-constitutional purpose. [*Id.* at 1202.]

3. Whenever a question of numerical division of a jury is asked from the bench, in the context of any inquiry into the progress of deliberation, it carries the improper suggestion that the state

tioned." *Brasfield v. United States, supra,* 272 U.S. at 450, 47 S.Ct. at 136, 71 L.Ed. 345. Accordingly, I dissent.

of numerical division reflects the stage of the deliberations. It has the double coercive effect of melting the resistance of the minority and freezing the determination of the majority. [*People v. Wilson*, 390 Mich. 689, 213 N.W.2d 193, 195 (1973).]