**Robert Allan CORNELL, Appellant,**

v.

**Crispus NIX, Warden, ISP, Appellee.**

No. 90–1195.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1992.

Decided Sept. 14, 1992.

James Cleary, Phoenix, Ariz., argued, for appellant.

Thomas McGrane, Des Moines, Iowa, argued (Thomas J. Miller, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, En Banc.

HANSEN, Circuit Judge.

Robert Allan Cornell (Cornell), an Iowa prisoner, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. We conclude that Cornell is not entitled to habeas relief.

## I. FACTS AND PROCEDURAL HISTORY

Cornell was convicted after a jury trial of the 1976 first degree murder of Kenneth Crow (Crow). *See* Iowa Code §§ 690.1, 690.2 (1975). He was sentenced to a term of life imprisonment without parole. *See* Iowa Code § 690.2 (1975).

Cornell's thirteen-year-old half brother, Glen Albert Oliver (Albert), was the primary witness against Cornell. Albert testified that he, Cornell, and Crow returned to Des Moines, Iowa, from a trip to San Antonio, Texas, on August 29–30, 1976. According to Albert, they stopped at a wooded area along Interstate 35 in southern Iowa on the morning of August 30th. Albert testified that Cornell and Crow left the vehicle for the stated purpose of shooting a cow. Cornell took a .38 caliber pistol with him. Albert then heard a shot, and Cornell returned alone. Albert further testified that "I asked [Cornell] if he did what I think [sic] he did and he said, 'Yes, does it bother you?'" Transcript of trial (trial tr.), vol. I, at 39. Albert did not testify that he actually saw Cornell shoot Crow. Albert informed the authorities of these events four days later and led the authorities to Crow's body. Crow had been shot once in the back of his head. In his defense, Cornell testified that Crow had left the car alive after an argument with Cornell and

had stolen Cornell's gun. The primary defense strategy was to impeach Albert's testimony with his prior inconsistent statements and with inconsistencies between his testimony and the physical evidence. The defense also theorized that Sheldon Bryce Oliver (Bryce or Bryce Oliver), Albert's brother, had killed Crow and had dumped the body along the interstate. The defense also emphasized that there was no physical evidence tying Cornell to the murder scene. Eric Lynn Cross (Cross) testified that shortly after the trip to Texas, Cornell told him that "we didn't have to worry about Kenny, because that Kenny had tried to shoot him and he [Cornell] broke his neck." Trial tr., vol. II, at 83. Bryce Oliver testified that Cornell made a similar statement to him.

Cornell's conviction and sentence were affirmed on direct appeal. *See State v. Cornell*, 266 N.W.2d 15 (Iowa), *cert. denied*, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Cornell's first federal habeas petition was denied. *Cornell v. Iowa*, 628 F.2d 1044 (8th Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981). In that petition, Cornell raised, *inter alia*, the question of whether the trial judge's inquiry into the numerical standing of the jury after several hours of deliberation and the giving of an *Allen*[1] charge constituted error. The jury had deadlocked at 7–5 but eventually reached a verdict after the *Allen* charge and six more hours of deliberation. Although expressing concern regarding the procedures followed by the trial judge, the majority of the panel found no violation of Cornell's constitutional rights. *Cornell*, 628 F.2d at 1048.

In 1981 Cornell filed an application for postconviction relief under Iowa Code Chapter 663A. He first asserted that several items of exculpatory evidence had been suppressed by the prosecution. He also presented newly discovered evidence suggesting that Bryce killed Crow. Finally, he claimed ineffective assistance of trial counsel. *See Cornell v. State*, No. 3453 (Iowa Dist.Ct. for Clarke County Dec. 15, 1986). The postconviction trial court de-

---

1. *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

nied Cornell's application in a lengthy and thorough opinion. The Court of Appeals of Iowa found that the prosecutor's suppression of exculpatory evidence denied Cornell a fair trial and then reversed and remanded for a new trial in a 3–2 decision. *See Cornell v. State*, No. 87–69 (Iowa Ct.App. Apr. 20, 1988). The exculpatory evidence upon which the court of appeals based its decision included: (1) a statement from Jody Seidenkranz (Seidenkranz) to Special Agent Robert Pontious of the Iowa Bureau of Criminal Investigation on October 6, 1976, that Cornell had told her when he returned from Texas that Crow had left the car and stolen Cornell's gun and that Albert had agreed with Cornell's statement; and (2) a statement from Bryce Oliver to Special Agent Pontious on September 29, 1976, that four days before Crow left for Texas they had had a fight and Bryce had taken out a razor scraper and threatened Crow. The Supreme Court of Iowa, in a unanimous decision, reversed the court of appeals, finding that the suppressed evidence was not material because a reasonable probability did not exist that the disclosure of the evidence would have changed the result of the trial. *See Cornell v. State*, 430 N.W.2d 384, 386 (Iowa 1988).

At the state postconviction hearing held in October of 1985, Cornell's counsel offered two signed but unsworn statements made by Cross in October of 1977. In those statements Cross recanted his trial testimony and implicated Bryce Oliver in Crow's death. Cross was not called to testify at the postconviction hearing because he was incarcerated in Missouri at the time. Cross's hearsay statements were admitted by the court, not as proof of the truth of the assertions therein, but only as proof that the statements were made and transmitted to the authorities. Special Agent Robert Pontious testified that he had investigated the statements made by Cross and that during an interview with

Cross on November 30, 1977, at the Iowa Men's Reformatory, Cross had informed Pontious that Cornell had intimidated him into making the recantation statements and that the statements were not true. Following the interview with Cross, Special Agent Pontious concluded that further investigation was not warranted. Cornell did not explicitly argue in his state postconviction action that Cross's 1977 recantation statements constituted newly discovered evidence that warranted a new trial.

Cornell filed the pending habeas corpus petition on November 9, 1988, and raised the suppression of the allegedly exculpatory evidence but did not raise any claim based on Cross's 1977 recantation. On February 6, 1989, Cornell amended his petition and alleged that additional exculpatory evidence, including Cross's 1977 recantation, had been suppressed by the prosecution. On February 28, 1989, Cornell's counsel obtained an affidavit from Cross. In the 1989 affidavit, Cross recants his trial testimony and asserts that he never heard Cornell say anything about harming Crow. Cross does state that he did not hear everything that Cornell said to Bryce. Cross also denied being visited by Pontious at the Reformatory in 1977. Cornell moved to supplement the record with Cross's 1989 recantation affidavit. The state resisted on the basis that there was no documentation of the efforts made to offer this evidence in the state postconviction proceedings. The district court denied Cornell's request to supplement the record with Cross's affidavit.

On December 17, 1990, a panel of this court remanded this case to the district court for an evidentiary hearing on the issue of whether Cross's recantation of his trial testimony was newly discovered evidence warranting a new trial. *See Cornell v. Nix*, 921 F.2d 769, 771 (8th Cir.1990). On August 20, 1991, following an evidentiary hearing,[2] the district court certified its find-

---

**2.** Cross testified at this evidentiary hearing. In addition to confirming the statements made in his 1989 affidavit, he also confessed to heavy drug usage prior to and during Cornell's trial. He also denied being visited by Special Agent

Pontious at the Reformatory in 1977. As the district judge noted in his certified findings and conclusions after remand, "[t]he evidence that Pontious did visit Cross on November 30, 1977, is overwhelming and compelling."

ings of fact and conclusions of law. The district court concluded:

> It is also reasonable to believe that had the jury in petitioner's trial, which deadlocked 7–5 after fifteen hours of actual deliberation and reached a verdict of guilty only after receiving an *"Allen* charge" from the judge and deliberating nearly six more hours, would probably have found petitioner not guilty if the type of evidence presented to me at the remand hearing and the suppressed exculpatory evidence (Jody Seidenkranz's October 6, 1976, statement and Sheldon Bryce Oliver's September 29, 1976, statement) had been presented to that jury. I believe that it is reasonably probable that if there is a retrial and all of this evidence is presented to the jury, the petitioner will be found not guilty.

District court's certified findings and conclusions, filed August 20, 1991, at 6. The district court declined to address the state's procedural default argument on the grounds that that issue was outside of the scope of the limited remand.

Following the district court's certification of its findings of fact and conclusions of law, the panel concluded that Cornell had demonstrated cause and prejudice for his procedural default in failing to raise earlier the issue of Cross's recantation and remanded with instructions to grant the writ subject to a new trial. *See Cornell v. Nix,* 953 F.2d 1103 (8th Cir.1992). We vacated the panel's decision and granted rehearing en banc. We now conclude that Cornell has not demonstrated cause for his procedural default with respect to his claim based on Cross's recantation. We also address Cornell's claim that certain exculpatory evidence was suppressed by the prosecution. We conclude that the allegedly suppressed exculpatory evidence was not material.

## II. CROSS'S RECANTATION

The state argues that Cornell's claim based on Cross's more recent recantation is procedurally barred by Cornell's failure to raise this claim in a timely fashion in the state courts.

■ A claim not raised in the state courts will not be considered by a federal habeas court unless the petitioner can demonstrate cause for his previous failure to raise the claim and prejudice. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Recently, the United States Supreme Court held that the cause and prejudice standard should also be used to evaluate whether a petitioner should be excused from his failure to develop a material fact in state court proceedings. *See Keeney v. Tamayo-Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

"[C]ause ... ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). An external impediment can be "the reasonable unavailability of the factual basis for the claim." *McCleskey v. Zant,* —— U.S. ——, ——, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991). *See also Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. "If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *McCleskey,* —— U.S. at ——, 111 S.Ct. at 1472. We also note that one aspect of the test for newly discovered evidence is whether the evidence could have been discovered earlier in the exercise of due diligence. *See United States v. Bednar,* 776 F.2d 236, 238 (8th Cir.1985).

■ Applying these standards, we find that the factual basis for Cornell's claim based on Cross's recantation was reasonably available to petitioner at the time of his state postconviction hearings. Postconviction counsel knew that Cross had previously recanted in 1977. Counsel knew that Cross was incarcerated in Jefferson City, Missouri. *See* transcript of October 9, 1985, postconviction hearing at 204. There is nothing in the record that suggests that counsel could not have obtained Cross's

recantation, through an affidavit, deposition, or other means, for the postconviction hearing.[3] There is nothing in the record that suggests that counsel made any attempt to contact Cross. We note that the postconviction trial court held evidentiary hearings on October 9–10, 1985; November 13, 1985; January 8–9, 1986; January 23, 1986; February 18, 1986; May 1, 1986; and June 5, 1986. It appears from our review of the record that the postconviction trial court gave Cornell every opportunity to obtain evidence in support of his claims. We find no due diligence here.

■ In *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), the United States Supreme Court held that there is no cognizable habeas claim for ineffective assistance of postconviction counsel because no constitutional right to counsel exists in postconviction proceedings. Thus, postconviction counsel's failure to more fully investigate the potential of Cross's recantation cannot constitute "cause."

Because we find that Cornell has not demonstrated cause for his procedural default, we need not address the issue of prejudice.

■ A narrow exception to the cause and prejudice standard exists. A procedural default will be excused if petitioner can demonstrate that a fundamental miscarriage of justice will occur from the federal court's refusal to entertain the claim. *See Tamayo–Reyes,* —— U.S. at ——, 112 S.Ct. at 1721; *Murray,* 477 U.S. at 495–96, 106 S.Ct. at 2649–50. In order to fall within this exception, petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. Recently, the United States Supreme Court refined the "actual innocence" standard and held that "to show 'actual innocence' [of the death penalty] one must show by clear and convincing evidence that but for a constitutional error,

no reasonable juror would have found the petitioner eligible for the death penalty." *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992). This new standard also applies to habeas challenges to convictions. *McCoy v. Lockhart,* 969 F.2d 649 (8th Cir.1992).

■ The district court concluded that if Cross's recantation and the statements from Jody Seidenkranz and Bryce Oliver were presented to a jury on retrial, there is a reasonable probability that the jury would acquit Cornell. Although this conclusion is not entirely equivalent to a finding of "actual innocence," we must address the question of whether this statement by the district court is a factual finding of actual innocence subject to a clearly erroneous review or whether this conclusion should be reviewed de novo. We have located no authority in the case law discussing what standard of review applies to a conclusion of actual innocence.

In *Sawyer,* the Supreme Court appears to apply a de novo standard to the issue of whether Sawyer had demonstrated actual innocence. *Sawyer,* —— U.S. at —— ——, 112 S.Ct. at 2523–25. In a somewhat related context, we have applied a de novo review to the ultimate conclusion of mixed questions of law and fact, although predicate factual findings are reviewed for clear error. *See, e.g., Bliss v. Lockhart,* 891 F.2d 1335, 1339 (8th Cir.1989) (reviewing de novo ultimate finding of ineffective assistance of counsel, which requires showing that but for counsel's unprofessional errors, the result of the proceeding would have been different). Accordingly, we consider the question of actual innocence de novo.

■ Cross's testimony was a small part of the evidence against Cornell. It was not, in our view, crucial to the prosecution's case. Bryce also testified that Cornell had made the statements which Cross attributed to Cornell. The testimony of Albert was the crucial testimony against Cornell.[4]

---

3. We recognize that Cross was outside the subpoena power of the Iowa court. *See* Iowa

R.Crim.P. 14(3) (1986) ("A subpoena may be served in any part of the state.").

4. Cornell's trial counsel stated at the postconvic-

Cross's recantation does not directly cast any further doubt on Albert's testimony. As discussed later in this opinion, we do not find the statements from Jody Seidenkranz and Bryce Oliver to be material under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), and *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Accordingly, we do not find that Cornell has demonstrated by clear and convincing evidence that but for the alleged errors, no reasonable juror would have convicted him.[5]

## III. SUPPRESSED EXCULPATORY EVIDENCE

■ In order to obtain habeas relief on his claim of improperly suppressed exculpatory evidence, Cornell must show: (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the issue of guilt. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). With regard to the first two prongs of the test, the state courts found that the prosecution did suppress the October 6, 1976, statement from Jody Seidenkranz and the September 29, 1976, statement from Bryce Oliver and that that evidence was favorable to Cornell's defense. We accept those findings. *See* 28 U.S.C. § 2254(d).[6]

Suppressed exculpatory "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682,

105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The Supreme Court of Iowa concluded that the statements from Seidenkranz and Bryce were not material because there was no reasonable probability that the result of the trial would have been different. *Cornell*, 430 N.W.2d at 386. The supreme court reasoned that the only use for Seidenkranz's statement would have been to impeach Albert and that Albert's testimony was impeached through the use of several prior inconsistent statements. *Id.* The court further noted that Albert's acquiescence in Cornell's statements could easily be explained by threats made by Cornell against Albert, which Albert had testified to at trial. *Id.* With regard to the statement by Bryce Oliver, the Supreme Court of Iowa reasoned that the statement would have impeachment value because Bryce had denied at trial threatening Crow with the razor scraper. *Id.* During his testimony, Cornell had testified concerning the threat made by Bryce against Crow. *Id.* The court also noted that this evidence would have bolstered Cornell's theory that Bryce killed Crow. *Id.* The court concluded, however, that a reasonable probability did not exist that the exclusion of Bryce's statement would have changed the result of the trial. *Id.*

■ A state court's determination regarding materiality under *Brady* is a mixed question of law and fact which is not entitled to the presumption of correctness under 28 U.S.C. § 2254(d). *See, e.g., Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988); *Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir.), *cert. denied*, 479 U.S. 962, 107 S.Ct. 458, 93

---

tion evidentiary hearing that "Albert's testimony was absolutely critical." *Transcript of February 18, 1986, evidentiary hearing* at 168 (testimony of the Honorable James W. Brown, Judge of the Iowa District Court, who was one of Cornell's two defense counsel before being appointed to the Iowa bench).

**5.** We note that the district court's conclusion is based on a test of "reasonable probability" that is less stringent than the test applicable under *Sawyer*.

**6.** We also note with respect to the Seidenkranz statement that it is Cornell's own explanation as to Crow's absence in which Albert acquiesced. Since Cornell, Seidenkranz, and Albert were all present when Albert did not contradict Cornell's version of what happened to Crow, Cornell would have known of Albert's acquiescence. It is difficult to see any prejudice to Cornell from the state's suppression of Seidenkranz's confirming statement about an event in which Cornell was a participant. Cornell knew that Seidenkranz was a person also present who could confirm Albert's acquiescence.

L.Ed.2d 404 (1986). After considering this matter de novo, we agree with the Supreme Court of Iowa that the suppressed evidence was not material.

■ The sole use of Seidenkranz's statement would have been to further impeach Albert. Albert was extensively cross-examined by counsel with his numerous previous inconsistent statements. The post-conviction trial court found that Cornell's attorney had "compiled numerous inconsistent statements of Albert Oliver on virtually every important point of his anticipated testimony" and had "prepared an elaborate cross-examination for Albert Oliver," and that his "planned impeachment of Albert Oliver was presented to the jury through a thorough cross-examination." *Cornell*, No. 3453, slip op. at 4–5. A reading of the murder trial transcript confirms those findings. Further, Albert testified that he was afraid of Cornell because Cornell had threatened to kill him if he told anyone. The jury was aware that Albert did not tell anyone of Crow's murder until several days after it happened.

We note the following testimony by Albert:

Q. When you got up to your mom's place, what did you do?

A. ... [W]e got out of the jeep and I just walked on up and so did Bobby and she asked where Crow was and Bobby said that he got mad and got out of the jeep and had stole his gun.

Q. Did you talk to Bob anymore in the week about this incident with Mr. Crow?

A. He kept on coming over to my house and asking everybody if they had seen Crow, and everybody just kept on telling him no; and he just told me to remember what he'd told me.

Q. What do you mean, "remember what he told me"?

A. He had told me if I told anybody he would kill me, too.

Trial tr., vol. I at 41–42.

This testimony demonstrates that the jury was aware that Albert had initially acquiesced in Cornell's version of the events due to his fear of Cornell. Although the record is less than entirely clear, we find that the incident with Albert's mother, Alberta Garner, is probably the same incident referred to by Jody Seidenkranz (Albert's sister) in her statement. This additional item of cumulative impeachment material does not raise a reasonable probability that the outcome of the trial would have been different.

■ Special Agent Pontious's report of his September 29, 1976, interview with Bryce Oliver states the following:

The reporting agent questioned BRYCE OLIVER regarding a possible threat he had made towards KENNETH CROW prior to the time ROBERT CORNELL, KENNETH CROW and ALBERT OLIVER left for San Antonio, Texas.

BRYCE went on to state that approximately four days before they left for Texas ... he and KENNY became involved in some type of argument at which time he took out a razor scraper which he carried in his pocket and made threats towards KENNY however, he stated that this was not unusual and that there was no intent in the threat.

At trial, Cornell testified that he was present at the argument between Bryce and Crow and that Bryce had pulled a razor knife and threatened to cut Crow up. Bryce testified at trial as follows:

Q: Did you have an argument with [Crow] shortly before he went to Texas?

A: Yes.

. . . .

A: We got in an argument because there had been a break in at Industrial [Janitorial Services] and he said that Eric and I were trying to set him up for it, and make him look like he did it; and we had an argument about it.

Q: This is the argument you called a friendly argument?

A: I have arguments with friends of mine all the time, but as long as it ain't a fist fight or something, I feel it's just an argument between friends.

. . . .

Q: You threatened him at the time? At the time you had the arguments, didn't you threaten him?

A: I don't recall.

Trial tr., vol. III, at 12–13. At his pretrial deposition, Bryce had testified as follows:

Q. Did you have a knife with you that day?

A. Yes.

Q. Did you pull that out?

A. No. If I pull a knife on somebody I'm going to use it, I'm going to carve them up. I'm not going to threaten nobody, it will be action.

Q. Did you threaten him that day with a knife?

A. I threatened to bust his head.

Deposition of Bryce Oliver at 118, as read during the February 18, 1985, evidentiary hearing at 51.

We first note that at trial Bryce did not deny threatening Crow. He testified that he did not recall whether or not he had. We also note that counsel did not impeach Bryce with his pretrial deposition testimony that he had threatened to bust Crow's head. The impeachment value of Bryce's statement to Special Agent Pontious is minimal. Further, although this evidence would have supported Cornell's theory that Bryce killed Crow, it does not conclusively prove either that Bryce actually killed Crow or that Cornell did not kill Crow. Finally, this evidence would not have affected the credibility of Albert's testimony. Accordingly, we find that there is not a reasonable probability that the disclosure of Bryce's statement would have affected the outcome of the trial.

## IV. CONCLUSION

We conclude that petitioner has not shown cause for his procedural default in failing to present his claim based on Cross's recantation to the state courts. We further conclude that the suppressed exculpatory statements of Jody Seidenkranz and Bryce Oliver are not material under *Brady* and *Bagley*.

Accordingly, we remand this matter to the district court with instructions to deny Cornell's application for writ of habeas corpus.

ROSS, Senior Circuit Judge, with whom McMILLIAN and JOHN R. GIBSON, Circuit Judges, join, dissenting.

I respectfully dissent from the majority opinion because I believe that the majority has improperly usurped the role of the trial court by substituting its own factual "findings" [1] for those of the trial court as to the effect of the newly discovered evidence on the outcome of Mr. Cornell's trial. The majority chooses to disregard the district court's finding that "the newly discovered evidence [Cross's 1989 recantation] bears upon the constitutionality of petitioner's detention ... [and] the suppressed exculpatory evidence is not only favorable to petitioner, but is material to the issue of guilt." Most significantly, the majority ignores the district court's conclusion that "it is reasonably probable that if there is a retrial and all of this evidence is presented to the jury, the petitioner will be found not guilty."

Instead, the majority concludes that Cornell has not established cause for his procedural default in failing to present the 1989 Cross recantation to the state court. In this conclusion, the majority misconstrues the nature of the Cross recantation. While it is true that Cross originally recanted shortly after Cornell's trial in 1976, Cross quickly withdrew that recantation, claiming that he had been coerced to recant, and the validity of the recantation was instantly discredited. Because of Cross's apparent change of heart, defense counsel chose not to further pursue the recantation theory at that time. In 1989, not only did Cross sign a sworn affidavit recanting his trial testimony, but he also provided sworn testimony before the federal district court. This is significant new evidence in light of the fact that allegations of coercion are no longer brought to bear on this latter recantation. Further, the 1989 recantation is not associated with Cross's heavy drug use which he

---

**1.** The majority makes no less than seven of its own "findings" throughout its opinion. *See ante* at pages 380–84.

subsequently admitted influenced his testimony at trial.

The majority entirely ignores precedent in our circuit that requires the consideration of newly discovered evidence in a habeas proceeding where it has been determined that the evidence "would probably produce an acquittal on retrial." *See Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977). Although this holding has been called into question by certain members of our court, the *en banc* court has declined opportunities to overrule this precedent and therefore *Mastrian* and its progeny remain valid law, binding upon this court.

The majority would have us believe that the evidence of Mr. Cornell's guilt was substantial and that, therefore, the suppressed evidence, which was clearly a *Brady* violation, and the recanted testimony, were not material to the outcome of the trial. However, the procedural history and the facts presented at trial demonstrate the questionable validity of this determination.

First, the jury was deadlocked 7–5 after fifteen hours of actual deliberation and reached a verdict of guilty only after receiving an *Allen* charge and deliberating nearly six more hours. In 1979, a federal district court granted habeas relief, finding that the *Allen* charge had served to improperly coerce the guilty verdict. *Cornell v. Iowa*, No. 78–368–2 (S.D.Iowa 1979). Then, in 1988, the Iowa Court of Appeals reversed the conviction and ordered a new trial on the basis of the material exculpatory evidence suppressed by the State of Iowa, a suppression which a federal district court subsequently found "reprehensible." *Cornell v. Nix*, No. 88–1618–B (S.D.Iowa 1990). Finally, the district court in the present case determined that if the recantation evidence and the suppressed exculpatory evidence had been presented to the trial court it would have resulted in a finding of acquittal.

Where the verdict is already of questionable validity, additional evidence of relatively minor importance becomes significant in the court's evaluation of newly discovered evidence. The evidence at issue in this case was of more than relatively minor importance. The only inculpatory evidence presented at the trial was that of the two brothers, Albert and Bryce Oliver, and Eric Cross. Cornell's theory of defense was that Bryce was the one who had killed Crow. Therefore, of those three witnesses, Cross was the only disinterested party and his testimony was crucial in that it served to lend substantial credibility to the testimony of the otherwise self-interested brothers. Obviously, without Cross's corroborating testimony, the credibility of Albert and Bryce would have been called into serious question.

Mr. Cornell is now serving a life sentence with no further state court proceedings available to present this new evidence, as conceded by the state's lawyer at oral argument. I consider it to be a fundamental miscarriage of justice to disregard the district court's finding on remand that, had the evidence been presented, a jury would have acquitted Mr. Cornell. I would direct the trial court to grant the writ of habeas corpus.